FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 08, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| D'SEAN E. MARKS,<br><br>      Plaintiff,<br><br> v.<br><br>JEFFEREY UTTECHT, CRCC Superintendent,<br><br>      Defendant. | NO: 4:20-CV-5160-RMP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant's Motion to Dismiss, ECF No. 25. Plaintiff D'Sean E. Marks, a *pro se* prisoner, did not file a response to Defendant's Motion. *See* ECF No. 26 (*Pro Se* Prisoner Dispositive Motion Notice). The Court has reviewed the motion, the record, and is fully informed.

## BACKGROUND

Mr. Marks brings this action pursuant to 42 U.S.C. § 1983, claiming Defendant Jeffery Uttecht, the Superintendent of Coyote Ridge Corrections Center ("CRCC"), has interfered with Mr. Mark's ability to exercise his Native American religion by denying him use of the CRCC's smudge pad and sweat lodge in violation

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

of the First Amendment and article I, section 11 of the Washington State Constitution. ECF No. 8 at 4.

Defendant now moves to dismiss the Amended Complaint, contending that Marks has failed to state a viable claim under the First Amendment and that Defendant Uttecht is entitled to qualified immunity. ECF No. 25 at 2.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure allow for the dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss brought pursuant to this rule "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing the sufficiency of a complaint, a court accepts all well-pleaded allegations as true and construes those allegations in the light most favorable to the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031–32 (9th Cir. 2008)).

To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# DISCUSSION

## A. First Amendment Claim

Defendant argues that Marks fails to state a viable First Amendment claim because the restrictions at the CRCC which temporarily[1] prohibited use of the smudge pad and sweat lodge were reasonably related to the prison's legitimate penological interest in stopping the spread of COVID-19. ECF No. 25 at 3–5.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted). "A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone*, 482 U.S. at 348).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (quoting *Turner v. Safley*, 482

---

[1] As of November 10, 2020, at the time of the filing of the Amended Complaint, the CRCC had lifted restrictions for use of the smudge pad, but had not lifted restrictions on use of the sweat lodge. ECF No. 8 at 3.

U.S. 78, 89 (1987)).  Valid penological objectives include, but are not limited to, deterrence of crime, rehabilitation of prisoners, and institutional security.  *O'Lone*, 482 U.S. at 348 (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *see, e.g.*, *Allen v. Toombs*, 827 F.2d 563, 567 (holding that policy prohibiting inmates held in the Disciplinary Segregation Unit from accessing the sweat lodge was reasonably related to legitimate concern for prison security).  "The First Amendment does not reach the 'incidental effects' of otherwise lawful government programs 'which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs.'"  *Piatnitsky v. Stewart*, Case No. 3:17-cv-05486-BHS-TLF, 2019 WL 2233342, at *10 (W.D. Wash. Feb. 27, 2019) (citing *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450–51 (1988)).

In order to establish a § 1983 claim for a violation of First Amendment rights, Marks "must show the defendant[ ] burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests."  *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) *abrogated on other grounds as recognized in Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

Defendant Uttecht admits that due to the COVID-19 pandemic, the CRCC limited inmate movement and access to programming, including Native American religious programming.  ECF No. 13 at 2.  In the First Amended Complaint, Marks

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 4

alleges that Defendant Uttecht violated the right to freedom of religious practice[2] "by issuing directives to ban all Native American smudging in the CRCC smudge pad and sweat lodge." ECF No. 8 at 4. However, Marks also acknowledges that these directives were "because of COVID-19." ECF No. 8 at 4. Thus, Marks has not pleaded the absence of a legitimate penological interest; rather, he acknowledges that the directives from Defendant Uttecht were related to the health and safety of prisoners housed at the CRCC. The Court finds, without hesitation, that protecting individuals in custody from heightened exposure to a serious, easily communicable disease, such as COVID-19, is a legitimate penological interest.

The Court assesses whether the CRCC's restrictions on use of the smudge pad and sweat lodge are reasonably related to the legitimate penological interest based on the following four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on the guards and other inmates; and (4) the absence of ready alternatives to the regulation. *Turner*, 482 U.S. at 89–91. These factors may

---

[2] Defendant's Motion does not challenge the sincerity of Plaintiff's belief, *see* ECF No. 25.

be considered at the pleading stage. *See, e.g.*, *Lewis v. Ollison*, 571 F. Supp. 2d 1162, 1167, 1172–72 (C.D. Cal. July 14, 2008) (granting motion to dismiss First Amendment claim where policy restricting quantity of prayer oil was reasonably related to legitimate penological interests to maintain safety and security).

First, there is a clear, common-sense, connection between limiting the movement and contact of prisoners, and the CRCC's objective to protect the inmates from contracting COVID-19. *See Maney v. Brown*, No. 6:20-cv-00570-SB, 2020 WL 7364977, at *5 (D. Ore. Dec. 15, 2020) (finding that there exists a clearly established right for individuals in custody to be free from heightened exposure to a serious, easily communicable disease such as COVID-19); *see also Whitmire v. Arizona*, 298 F.3d 1134, 1136 (9th Cir. 2002) (citing *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999) ("A dismissal on the pleadings, without requiring any evidence corroborating that a rational connections exists . . . is appropriate only when a common-sense connection exists between the prison regulation and the asserted, legitimate governmental interest.").

Second, regarding alternative means of exercising the right that remain open to the inmate, Marks alleges that the CRCC staff denied him any alternative chance to smudge in his cell because of a Department of Corrections policy that bans the use of lighters or matches in an individual's living unit. ECF No. 8 at 3; *see Hyde v. Fisher*, 203 P.3d 712, 723 (Idaho Ct. App. 2009) ("[T]he risk of fires, either accidental or intentional, and the safety and health concerns for inmates and staff are

the primary purpose for controlling smoking and ignition devices at [the facility]"). There is a distinction between a religious practice, such as using the smudge pad, and a religious commandment, such as not cutting one's hair. *See Henderson v. Terhune*, 379 F.3d 709, 714 (9th Cir. 2004) (finding that the second factor weighed in the prisoner's favor where cutting his hair involved a strict religious prohibition about the sanctity and purity of the body).

Although the Court acknowledges the significance of the practice of smudging to adherents of Native American faith, "the relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in a particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmates have been denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (citing *O'Lone*, 482 U.S. at 351–52). Thus, the denial of an alternative to the specific practice of smudging, as alleged by Marks, is not dispositive as to other alternative means of exercising the right that remained viable during the COVID-19 pandemic.

With respect to the third and fourth factors, if the CRCC implemented special accommodations for use of the smudge pad and sweat lodge, the health and safety of guards and other inmates would be implicated, and prison resources would be stretched even further given the need for additional security and sanitation. *See also Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008) *cert. denied* 556 U.S. 1105 (2009) (noting the sweat lodge's drain on prison security's manpower over the

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 7

multi-hour duration of the ceremony in dismissing Plaintiff's claim under RLUIPA); *see also Atwood v. Davis*, No. CV 20-00623-PHX-JAT (JZB), 2021 WL 100860, at *8 (D. Ariz. Jan. 12, 2021) (holding that the plaintiff did not show a likelihood of success on the merits of RLUIPA claim because suspension of religious visitation at prison was the least restrictive means of furthering the compelling government interest in preventing the spread of COVID-19 to prison staff and prisoners).

Upon balancing the four factors, the Court finds that Defendant Uttetch's directives restricting the use of the smudge pad and sweat lodge due to COVID-19 are reasonably related to the legitimate penological interest of protecting inmates from contracting COVID-19.

Accordingly, Marks has not pleaded enough facts to state a claim to relief given that a common-sense connections exists between the challenged directives and a legitimate penological interest, specifically the health and safety of prisoners housed at the CRCC.

**B. Qualified Immunity**

Defendants argue that even if Marks stated a viable constitutional claim, Defendant Uttecht is entitled to qualified immunity because the law is not clearly established as to whether prisons and prison officials may limit inmate access to religious programming in order to prevent the spread of a pandemic. ECF No. 25 at 7.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Because the premise of qualified immunity is that state officials should not be liable for money damages absent fair warning that their actions were unconstitutional, the clearly established law standard 'requires that the legal principle clearly prohibit the [defendant's] conduct in the particular circumstances before him.'" *Sandoval v. County of San Diego*, 985 F.3d 657, 674 (9th Cir. 2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

Although the law is clearly established that prisoners retain First Amendment protections with respect to the free exercise of religion, *O'Lone*, 482 U.S. at 348, there is no clearly established precedent on the appropriate constitutional response to a novel pandemic, during which prisons and prisons officials were and continue to be tasked with balancing the prisoner's First Amendment rights with the need to protect individuals in custody from exposure to COVID-19. *See Maney*, No. 6:20-cv-00570-SB, 2020 WL 7364977, at *5 ("[T]he law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and the Court finds that this clearly established right extends to protection from COVID-19."). "[T]he problems that arise in the day-to-day operation of a corrections facility are not

susceptible of easy solutions[,]" especially during a novel pandemic. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Accordingly, Defendant Uttecht is entitled to qualified immunity.

Having found that Plaintiff's claim under the First Amendment is subject to dismissal, the Court declines to exercise supplemental jurisdiction over the remaining state law claim arising under article I, section 11 of the Washington State Constitution based on the same directives restricting Marks's use of the smudge pad and sweat lodge.

Given that Defendant Uttecht is entitled to qualified immunity based upon the particular circumstances of COVID-19, the Court finds that granting Marks leave to amend the First Amended Complaint or an appeal of this Order would be futile. Nonetheless, Marks may file a notice of appeal within 30 days after entry of the judgment or this Order. Since the Court directed service of the First Amended Complaint and directed Defendant Uttecht to file an answer, ECF No. 10, dismissal of the action shall not count against Marks for purposes of the three strikes provision of the Prisoner Litigation Reform Act, *see* 28 U.S.C. § 1915(g).

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss, **ECF No. 25**, is **GRANTED**.
2. Plaintiff's First Amended Complaint, **ECF No. 8**, is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment of dismissal with prejudice, provide copies to counsel and Plaintiff, and **close this case**.

**DATED** July 8, 2021.

                                         *s/ Rosanna Malouf Peterson*
                                ROSANNA MALOUF PETERSON
                                    United States District Judge